*1173 OPINION.
Littleton:
Where property which was acquired prior to March 1, 1913, is exchanged for other property, with a resulting loss, such loss must be measured under the provisions of section 202 of the Revenue Act of 1918 by the difference between the fair market value of the property received in exchange and the cost, or March 1, 1913, value, whichever is lower, of the property exchanged. Three essen *1174 tial factors then must be established and proven in order to show that a deductible loss has been sustained, namely: (a) Cost of the property exchanged; (5) March 1, 1913, value of the property exchanged; and (c) fair market value of the property received in exchange. Lacking evidence to establish any one of these three factors, a claimed loss must be disallowed.
In the instant appeal the taxpayer exchanged $17,000 par value of capital stock of the Johnson Fare Box Co. for $40,000 par value of capital stock of the Johnson Coin Counting Machine Co. He felt impelled, so he testified, to make this exchange at what he then believed to be a sacrifice, in order that he might be in a position to bring about the consolidation of the Johnson Coin Counting Machine Co. with the Standard Coin Counters, Inc., by which he hoped to save the first-mentioned company from financial disaster and complete failure, thereby circumventing a threatened loss of his entire investment in that company. He has estimated that the stock which he exchanged had a value of $17,000, and he testified that the fair market value of the stock received in exchange was not in excess of $10,000, and these things indicate to him that he sustained a loss of $7,000 from the exchange. But, as we have already pointed out, the determination that a loss was actually sustained, and the amount thereof, must be based upon factors other than, these.
Upon the evidence adduced in this appeal we have been unable to find, as our findings of fact will indicate, little more than the fact that the exchange actually took place. The cost of the property exchanged and the fair market value of the property received in exchange have not been established by competent evidence. Under the circumstances we can not find that the taxpayer actually sustained a loss from this transaction.
The taxpayer now contends that the net income of the years 1916, 1917, and 1918, as shown by his tax returns, was understated and the net income of the years under consideration was overstated through failure properly to compute the actual profits derived from the sale of these lots. He further contends that he and his brother actually purchased the lots at a cost of $108,500; that this cost should be spread ratably over the total number of lots in the subdivision; and that, in determining what part of the proceeds received by him from the sale of each lot represents a taxable jorofit, there should be applied against such proceeds the same proportion of the ratable cost of the lot as the proceeds received during the year bear to the total expected proceeds which will accrue to him from the sale of the lot.
The taxpayer during the year 1915 engaged jointly with his brother in an enterprise involving the subdivision of the land described in the findings into lots and the sale thereof. In pursuance of this arrangement an agreement was signed on January 6, 1916. *1175 between the taxpayer and bis brother, as parties of the first part, and Albert L. Lafferty, as owner of tbe land, by the terms of which agreement the taxpayer and his brother agreed to subdivide a tract of land' owned by the said Albert L. Lafferty into lots and sell such lots on the installment plan. Such lots were to be sold through the agency of the North American Realty Co. The agreement provided that the total gross selling price for all of the lots should not be less than $650,000; that the subdivision and sale of such lots should not extend over a period greater than three years; and that taxpayer should not receive any portion of the sale price of lots until $108,500 should have been paid to Albert L. Lafferty, the owner of the property.
The taxpayer did not receive any payments for his share of the profits until the latter part of the year 1918, although he claims that most of the lots were sold prior to the year 1918, and he assumed that, inasmuch as his income was reported on the cash receipts and disbursements basis, such income should not be reported until actually received. He now claims that he should have the right to exercise the option of reporting either his proportion of the profits for the year in which sales were made or deducting the proportion of costs from moneys as received. In pursuance of such claim the taxpayer now demands the right to submit amended returns for all of the years 1916 to 1921, inclusive. The Board is not concerned with the question of whether the taxpayer should file amended returns for the years claimed. The question upon which this'Board must pass is whether the deficiency, as determined by the Commissioner and which is involved in this appeal, is correct. This brings us to the point at issue, which is narrowed down to the true construction of the agreement dated January 6, 1916.
The taxpayer contends that the agreement constituted the purchase of the land and that the actual purchase was contemplated in the agreement, and therefore he should be permitted to report the sales of the lots made each year, and, after deducting the cost and expenses, return the balance for each year in which the sales of lots were made, although he received no actual income for any work performed or sales made until the latter part of the year 1918. In support of this contention he has adopted certain isolated words and phrases of the agreement, thereby claiming that the agreement was one of sale of real estate. In construing the agreement in question it is necessary that the contract be taken as a whole. The intention of the parties which courts seek to discover in construing a contract is to be gathered not from particular words and phrases but from the whole context of the agreement. It is a settled rule of law in the construction of contracts that the interpretation must be of the entire instrument and not merely disjointed or particular *1176 parts of it. The contract must be viewed from beginning to end, for one clause may modify, limit, or illuminate the other.
By reading the contract carefully and taking the whole context of the agreement, we are of the opinion that the agreement in question is not a contract for sale of real estate but an agreement between the taxpayer and the owner of the land to perform certain work within a specified time — that is, to subdivide the land into lots and place such lots upon the market to be sold through selling agents agreed upon, or to be agreed upon, by the parties to the contract in question. The agreement was nothing more than a sales agency contract between the owner of the land and the taxpayer. The taxpayer could not at any time have demanded anything more than £he payment to him of the commission to which he was entitled for lots sold after the owner of the land had received the sum of $108,500. Tie at no time had title to land, but all deeds to lots were made by Lafferty with the purchasers. The taxpayer was merely the selling agent of Albert L. Lafferty and any money received from this source was, therefore, income in the year in which it was received.